RECEIPT # 58029
AMOUNT $ 150.00
SUMMONS ISS. 400-3 mailed out
LOCAL RULE 4.1 _____
WAIVER OF SERV. _____
MF ISSUED _____
BY MDJ OR 121 _____
DEPUTY CLK _CY_

97-mc-10605-(NG)

************************************************************
**PETITION FOR JUDICIAL REVIEW**

Petitioner: Michael A. FATUROTI            DATE: Feb. 1999

04-11791 NG

Postal Address: P.O. Box 230013
                Boston, MA 02123-0013

COURT: United States District Court   Referred to MJ J60ein
       District Court of Massachusetts
       Boston, MA 02210

JUDGE: District Court Judge NANCY GERTNER
************************************************************

## ABSTRACT

In July 1988, I applied for a change of status from a non-immigrant to a temporary resident under the Special Agricultural Worker (SAW) Program. I became a temporary resident on July 15, 1988.

Between July 1990 and January 1991, I submitted an application to become a permanent resident. I became a lawful permanent resident (LPR) on December 1, 1990.

Based on my status as a permanent resident, I submitted an application for naturalization in December 1995.

Following a March 18, 1996 citizenship interview, the INS denied my application for naturalization on grounds that I failed to meet the requirements of the SAW program. In a letter dated Sept. 11, 1997 and signed by the District Director, Steven J. Farquharson, I was advised to appeal the INS decision.

I made an appeal, stating the reasons why I thought the INS should approve my naturalization application. I had a hearing on my appeal on May 12, 1998.

In another letter dated Nov. 9, 1998 and signed by the INS District Director, Steven J. Farquharson, the INS denied my appeal on grounds that I was not legally admitted into the United States. Hence my petition.

In my petition, I argued that though I obtained my temporary resident status under the SAW program, I obtained my lawful permanent resident status (LPRS) pursuant to the new INA sec. 245A, a 2-tier legalization program because "... SAWs do not have to continue to work in agriculture to achieve permanent resident status" and, "The INS has no discretion to deny legalization to a SAW applicant who is otherwise qualified."

I also argued that the Adjudications Officer, my interviewer during the May 12 1998 hearing and the INS District Director violated the statutory guarantee of confidentiality and protection for SAW applicants who sought help from Qualified Designated Entities in completing their temporary resident applications when both of them used information on my form I-700 without my knowledge to challenge the legality of my lawful permanent resident status.

Finally, I argued that the INS District Director violated the 5-year statute of limitations by challenging the legality of both my temporary resident status and lawful permanent resident status and using the same to deny my naturalization application almost eleven and ten years respectively after both statuses were granted.

"A rescission proceeding is governed by a five-year statute of limitations." 8 U.S.C. sec. 1256(a). "After five years, the alien's status is unassailable."

**Petition:** For Judicial Review of INS Decision To Deny Naturalization Application.

**COURT:** United States District Court
District Court of Massachusetts,
Boston, MA 02210

**Petitioner:** Michael A. FATUROTI          **DATE:** February 02, 1999

**Introduction:**
I am petitioning the United States District Court for a judicial review of the final decision of the Immigration and Naturalization Service to deny my naturalization application The **decision**, delivered by a letter dated NOV. X9, 1998 was signed by Steven J. Farquharson, District Director, Boston INS Office.

I am doing this in accordance with Title 5, U.S.C. chapter 7 and in accordance with a court directive issued through a March 27, 1998 MEMORANDUM AND ORDER **C. A. No. 97-10605-MBD**. 8 U.S.C. sec. 1421(c); 8 C.F.R. sec. 336.9(b).

In July 1988, I filed form I-700 at the Hialeah (Florida) Office of the INS for a change of status from a nonimmigrnt to a Temporary Resident under the Special Agricultural Worker (SAW) Program in accordance with Section 210 of the Immigration and Nationality Act. 8 U.S.C. 1160. I became a Temporary Resident on July 15, 1988.

In July 1990, it became difficult to renew my Temporary Resident Status. On advice from the Boston INS District Office, I successfully transferred my file to the Boston District Office with the help of an immigration attorney/adviser.

Soon after that, I filed form I-485 with the INS Eastern Regional Office in Vermont in accordance with the new sec. 245A to complete the legalization program. I became a Lawful Permanent Resident on December 01, 1990.

Based on my status as a Lawful Permanent Resident, I filed an application for naturalization in December 1995.

Contary to the INS Director's claim that "You testified (during the May 12, 1998 hearing) that your application for permanent residence under the SAW program was submitted by you to an INS office in Florida," my application to become a permanent resident was obtained at the Boston District Office and mailed to the East Regional Facility in Vermont where it was processed. Further, my application to become a permanent resident was not processed under the SAW program. Rather, it was obtained pursuant to a new section 245A. (Form I-485) INA sec. 245A.

"Like the main legalization program, the INS must grant temporary and permanent resident status to all special agricultural workers who meet the eligibility requirements of the SAW program. **The INS has no discretion to deny legalization to a SAW applicant who is otherwise qualified.**" H.R. Rep. No. 99-682 Part 1, 99th Cong., 2d Sess. note 5 at p. 86. Cf. new INA sec. 245A(a). (Maurice A. Roberts and Stephen Yale-Loehr. Understanding the 1986 Immigration Law. A Practical Analysis 1st Edition, 2nd Printing. Federal Publications, Inc. 1987 ch. 4 p. 4-6, par. 2).

"Section 201 of the Act provides for (a 2-tier) legalization (program) in a new sec. 245A, which is added to the INA" to take care of "SAW applicants who are otherwise qualified." (Roberts & Yale-Loehr, op cit ch. 3 item # 2, p. 3-1.

For the sake of clarity, even though I obtained my temporary resident status under the SAW program, my application to become a permanent resident was obtained in accordance with the provisions of the 2-tier legalization program because I was "otherwise qualified." INA sec. 245A. "The INS has no discretion to deny a SAW applicant who is otherwise qualified."

From what I said above, it is apparent that my lawful permanent resident status was legally obtained.

The legal provision for permanent residence under the SAW program requires actual and specified amounts of agricultural work on the part of a SAW applicant with perishable commodities during a specific time period, i.e. 90 man-days.

As I said above, my permanent resident status was not obtained under the SAW program but in accordance with the provisions of the 2-tier legalization program. There was, therefore, no need for me to perform agricultural work beyond the temporary resident status. I was "otherwise qualified."

> "... unlike replenishment workers, SAWs don't
> have to continue to work in agriculture to
> achieve permanent resident status."
> New INA sec. 210(a)(5); cf. new INA sec. 210A(d)(5).
> (Roberts & Yale-Loehr op cit ch. 4, p. 4-10, par. 3).

To that extent, my lawful permanent resident status was legally obtained. I did not obtain permanent resident status through the SAW program. Contrary to the INS Director's claims, I did not, at any time during the appeal process, concede that I illegally obtained my lawful permanent resident status through the SAW program. "The INS has no discretion to deny legalization to a SAW applicant who is otherwise qualified." (id'd).

2. The fact that I obtained my legal permanent resident status by filing a separate application (I-485) with the Vermont Eastern Regional Processing Facility independent of the SAW Program but in accordance with the new section 245A (Jan. 1991), confirms the fact that my Lawful Permanent Resident Status (LPRS) was legally obtained. New sec. 245A of INA sec. 201.
(Roberts & Yale-Loehr, op cit, ch. 3, p. 3-1 item #2.

My status was not routinely adjusted to that of a permanent resident as provided under the SAW program.

> "Once a special agricultural worker has attained temporary resident status, adjustment to permanent resident status should be routine. Under proposed INS regulations, the alien would have to fill out (1) an affidavit stating that he or she has maintained status as a temporary resident, and (2) the paperwork to allow issuance of a green card."
Proposed 8 C.F.R. sec. 210.4(b)(1). (Maurice A. Roberts & Stephen Yale-Loehr. Understanding the 1986 Immigration Law. A Practical Analysis. ch. 4, p. 4-11).

My lawful permanent resident status (LPRS) was granted pursuant to the new section 245A of the Act (the 2-tier legalization program (Form I-485) **not** by routine. Therefore, I legally obtained my LPRS.

In 1993, - 5 years after filing form I-700 - when I initially filed Form N-400, I was advised to wait until Sept. 1995 - when it would be 5 years after attaining permanent resident status. (See enclosed INS letter).

Although the Adjudications Officer (Dorfman) wrongfully believes that the form I filed between July 1990 and January 1991 was Form I-90, I insist that it was Form I-485. I obtained the form from the Boston District Office and mailed it to the Northeast Regional Processing Facility in Vermont accompanied with a Money Order for thirty-five dollars (the price of I-485 at that time, soon after that, the price jumped to seventy dollars) to complete the legalization program pursuant to INA 245A.

Be that as may, I believe it is untimely and improper for the INS Director to attack my Temporary Resident Status and use it to deny my naturalization application because by doing so, he violates the 5-year statute of limitations. I became a Temporary Resident in July 1988, almost eleven years ago!

3. **The Statute of Limitations:**
   "A rescission proceeding is governed by a five-year statute of limitations." **Fulgencio v. INS, 573 F.2d 596 (9th. Circ. 1978)**; 8 U.S.C. sec. 1256(a).

Therefore, by denying my naturalization application, based on information on my form I-700 almost eleven years after my temporary resident status was granted, the INS Director violates the five-year statute of limitations. Similarly, by using the same information to attack the legality of my lawful permanent resident status (LPRS) almost ten years after it was granted, the INS Director violates the 5-year statute of limitations.

> "After five years, the alien's status is unassailable."
> **Quintana v. Holland, 255 F. 2d. 161-166,** esp. 163, 164 **(3d. Circ. 1958).**

4. Contrary to the INS Director's claim, I never conceded to have illegally obtained my Legal Permanent Resident Status **(LPRS)** through the SAW Program. Rather, my LPRS was obtained through the two-tier legalization program by filing form I-485 between July 1990 and January 1991 in accordance with the new sec. 245A. "The INS has no discretion to deny legalization to a SAW applicant who is otherwise qualified." (id'd)

5. The Hialeah INS Office which granted my Temporary Resident Status was a legal INS business Office in July 1988 when I visited them. I believe that the Haitian Agency which introduced me to the Hialeah INS Office was an approved Qualified Designated Entity (QDE) created by a notice published in the Federal Register Volume 52, #40 March 2, 1987, pp. 6230-6235 amended in the Federal Register, Volume 52, #58, March 26, 1987, pp. 9717-9723. There is, therefore, nothing illegal about going through a QDE to apply for temporary resident status under the SAW program.

    Qualified Designated Entities (**QDEs**) were not limited in the amount they could charge an applicant. What I mean to say is that **QDEs** were allowed to charge some amount over their cap to reflect the cost of services rendered. Federal Register, Volume 52 Nos. 40 and 58 (id'd).

Therefore, that I admitted paying $2000-$3000 does not, in itself, connote fraud. I believed (I still do) that the amount charged by the QDE (Haitian Agency) reflected the cost of services provided i.e. counseling and medical services (including blood, urine and drug tests). I had no knowledge of any fraud or misrepresentation of facts during this process. I also had no reason to believe that the price was different. Besides, I had no choice but to pay the amount charged. Otherwise, I wouldn't have been able to obtain their services.

The INS Director misunderstood some of my testimony during the May 12, 1998 hearing. Contrary to what he believed, I did not complete my legalization forms in Florida. However, I did complete in Florida, the application to become a Temporary Resident under the SAW program (Form I-700) in July 1988.

6. The INS Director used information on my form I-700 contrary to the provisions of INA section 245A(C)(4).

    "Applicants who seek assistance from a Qualified Designated Entity (QDE) in the preparation of an application for temporary resident status are protected by INA section 245A(C)(4). ... records maintained by the QDE are confidential and the Attorney General and the INS are forbidden access to the QDE's files without the consent of the alien." **8 CFR 245a.2(t).**
(Sarah Reinhardt with Lory D. Rosenberg. Immigration Law Library 1988 Legalization Handbook. How to Obtain Legal Residence Under the New Immigration Laws by the National Immigration Project of the National Lawyers Guild. Clark Boardman Co., Ltd. ch. 2, sec. 2.2(a), p. 2-7).

The Director, by using the information on Form I-700 to deny my application for naturalization may have violated the **"confidentiality"/"fruit of the poisonous tree"** provisions of INA sections 245A(C)(5) and 245A(C)(4).

    "The contents of the application and supporting documentation provided by an applicant for temporary resident status under the legalization program are protected by a statutory guarantee of confidentiality. INA sec. 245A(c)(5) prohibits the use of the information furnished pursuant to an application for temporary residence by any official, employee, bureau or agency of the Department of Justice for any purpose other than to: (a) make a determination of the application, ... ."
    INA 245A(c)(4); 8 C.F.R. sec. 245a.2(t).
(Sarah Reinhardt with Lory D. Rosenberg. Immigration Law Library. 1988 Legalization Handbook. How to Obtain Legal Residence... op cit ch. 2, sec. 2.2(a), p. 2-5).

7. **Move to suppress evidence:**
    I am therefore praying the court to **suppress** the information on my form I-700, the information I supplied during the May 12, 1998 testimony and all information I volunteered both before and after the May 12, 1998 interview in accordance with the provisions of Immigration and Nationality Act (INA) sec. 245A(C)(5): **statutory guarantee of confidentiality.**

    "Any person who believes that a criminal, civil, deportation or other proceeding was commenced based directly or indirectly on information filed in connection with any application for temporary resident status can: (a) request the suppression of such evidence as the "fruit of the poisonous tree, ... ."
    <u>Matter of Garcia-Flores</u>, 17 I & N Dec. 325 (BIA-1980); <u>Matter of Toro</u>, 17 I & N Dec. 340 (BIA-1980).
    (Reinhardt & Rosenberg op cit p. 2-6 par. 3).

The "duty to enforce an agency regulation is most evident when compliance with the regulation is mandated by the Constitution or federal law," stated the Supreme Court. United States v. Caceres, 99 S. Ct. 1465 (@ **1470**) (1979); <u>Matter of Garcia-Flores</u>, 17 I & N Dec. 325 (BIA-1980).

I was tricked into testifying against my interest, first, when the Director originally denied my application, he based his decision on the fact that I did not fulfill the statutory requirements of the SAW Program. I was forced to look for a sound reason for failing to work 90 days in the Agricultural sector. Only I forgot to mention then that "SAWs do not have to continue to work in agriculture to achieve permanent resident status."
New INA sec. 210(a)(5); cf. new INA sec. 210A(d)(5).

Second, I was tricked by the interviewer, Dorfman, when he claimed that he had in his possession a copy of the form which I had submitted through the East Regional Office in Vermont (Jan. 1991). He had insisted that it was form I-90. I was forced to remain silent to **avoid being rude to the Adjudications Officer**. The trick became apparent when he, Dorfman, told and showed me that it is on record that "The application which you signed dated July 14, 1988, indicates that you picked "green beans" for "Mr. Arthur Broadnax (sic)" at Leon McNally (farm), Dade (County), FL." from "8/85 to 4/86" for more than 90 days" in violation of INA sections 245A(C)(4) and 245A(C)(5). (Page 1, par. 2 of decision).

Third, I was forced to testify against my own interest because I couldn't risk foregoing the only available opportunity of a hearing (Administrative Review) under the citizenship program within the INS. Had I refused to testify, I would have forfeited that opportunity. That would have ended my quest for naturalization.

Finally, the Director, by denying my application for naturalization, is trying to penalize me for testifying truthfully at the May 12, 1998 interview.

"To be admissible ... evidence must be probative and its use fundamentally fair so as to not deprive respondents of due process of law as mandated by the 5th. amendment." Trias-Hernandez v. INS, 528 F.2d 366, 369 (9th Cir. 1975)

By tricking me into testifying against my own interest, the interviewer may have violated my 5th amendment rights <u>Matter of Toro</u>, 17 I & N Dec. 340 (BIA-1980).
(Reinhardt & Rosenberg. op cit p. 2-7).

8. Contrary to what the INS Director's understanding is, my Sept. 11, 1997 letter did not indicate that I tried to justify illegal steps in seeking permanent residence.

Rather, it explained the reason I went to Florida to seek a change of status to Temporary Resident under the SAW program rather than stay in Boston and do so. A similar opportunity was not available in Boston.

9. Contrary to the INS Director's understanding, I never agreed that a feeling of pressure to maintain my legal status in the United States justified presenting a fraudulent application to the Immigration and Naturalization Service. I never presented a fraudulent application to the Immigration & Naturalization Service. Rather, the feeling of pressure urged me to seek a change of status from that of a nonimmigrant to that of a temporary resident before my visa expired.

    The statement in paragraph (i) of page 2 of decision was not only quoted out of context, it was misconstrued. It was an explanation for going to Florida for a change of status to that of a Temporary Resident and **not** a reason for taking any illegal steps.

    Besides, I obtained my Temporary Resident status more than ten years ago (July 1988)! I believe that it is improper, untimely and a violation of the five-year statute of limitations for the INS Director to deny my application for naturalization by accusing me of taking illegal steps to obtain the same almost eleven years after attaining temporary resident status. "After five years, the alien's status is unassailable." Quintana v. Holland, 255 F.2d 161, 164 (3d Cir. 1958). **Fulgencio V. INS, 573 F.2d supra @ 598.**

    I reiterate that "SAWs do not have to continue to work in agriculture to achieve permanent resident status." New INA sec. 210(a)(5); cf. new INA sec. 210A(d)(5). (Roberts & Yale-Loehr. op cit p. 4-10).

10. If the INS Director is allowed to challenge the legality of my Temporary Resident Status more than 10 years after it was approved, and use the same to challenge the legality of my Lawful Permanent Resident Status 9 years after it was granted, he will be violating the 5-year statute of limitations!

    "A rescission proceeding is governed by a five-year statute of limitations." 8 U.S.C. sec. 1256(a). "After five years, the alien's status is unassailable." **Quintana v. Holland, 255 F.2d 161, 164 (3d Cir. 1958). Fulgencio v. INS, 573 F.2d** supra @ 598.

11. I am therefore, asking the court, your honor, not only to determine this case but also to decide in my favor by granting my application for naturalization. I believe that I have met all the necessary conditions for legalization (hence I am lawfully admitted into the United States).

> "The INS has no discretion to deny
> legalization to a SAW applicant who
> is otherwise qualified."

**HR Rep No. 99-682 part 1**, supra **note 5, @ 86.**
**CF new INA sec. 245A(a).**
(Roberts & Yale-Loehr. ch. 4, p. 4-6, par. 2).

By filing Form I-485 between July 1990 and January 1991 pursuant to the new INA sec. 245A before I obtained Lawful Permanent Resident Status (LPRS), I completed the 2-tier legalization program only because I was otherwise eligible and **not** in accordance with the provisions under the SAW program.

I am, therefore, arguing that I legally obtained my lawful permanent resident status because I met all the eligibility requirements, including making a timely application and maintaining continuous residence in the United States since 1988 I was granted temporary resident status. I am admissible as an immigrant (no conviction of any kind in the U.S. or anywhere else). I have met the basic citizenship skills, (i.e. the requirements of INA sec. 312, relating to minimal understanding of ordinary English Language and, a knowledge and understanding of U.S. history and government. I have also ensured that I do not violate any of the eligibility requirements under Good Moral Character. (Roberts & Yale-Loehr. Understanding the 1986 Immigration Law. A Practical Analysis. op cit 1987 ch. 3 p. 3-5 item #4).

I am, also praying the court to decide in my favor not only because it will give me ample opportunity to more vigorously jobsearch but also because "Deprivation of citizenship ... is a form of punishment more primitive than torture, for it destroys for the individual the political existence that was centuries in the development."
(Report of the President's Commission on Immigration and Naturalization, 1953 p. 235); **Kennedy v. Mendoza-Martinez 372 U.S. 144, 160; 83 S.Ct 554, 563; 9 L.Ed.2d 644 (1963) Trop v. Dulles, 356 U.S. 86, 101; 78 S.Ct. 590, 598; 2 L.Ed. p. 630 (1958).**

12. During the May 12, 1998 hearing, my silence when the interviewer, Dorfman, disagreed with my claim that I had filed **Form I-485** with the East Regional Processing Facility in Vermont) was not a concession that I had never filed an application for an adjustment of status to that of Permanent Resident pursuant to sec. 245 of the Immigration & Nationality Act. 8 U.S.C. 1255. Rather, **it was to avoid being rude to my interviewer,** the Adjudications Officer, who claimed that he had the form in front of him and had insisted that it was form I-90!

**I believe that the Director was either misguided or improperly advised for him to have concluded that:**

> "... there is no evidence on record which would indicate that a visa petition had ever been approved on your behalf, which would have been a prerequisite for approval of adjustment of status under sec. 245 of the Act. 8 U.S.C. 1255."

If I did not file Form I-485, I wouldn't have been invited to the March 18, 1996 citizenship interview. That I couldn't satisfy the Adjudications Officer, Mr DORFMAN, at the May 12, 1998 hearing, does not negate the fact that I filed form I-485, completed the legalization program and legally obtained my lawful permanent resident status.

In Jan. 1993, I submitted Form N-300: Application for Declaration of Intention in order to become a Teacher, (i.e. employment-based visa petition in accordance with INA sec. 203(b)) and as required by the Education Department and Boston Public Schools.
(Aleinikoff, Martin & Mototomura. Immigration Process and Policy. West Publishing Co., St. Paul, MN 1995. American Casebook Series, pp. 128-129).

I also filed Form N-600: Application For Certificate of Citizenship, hoping that with my education, I would be able to obtain gainful employment, make enough money to be able to develop and nurse my own company such that one day I can become a businessman with enough required funds to be a U.S. national (business visa). However, because a blackmailer from the INS Boston Office has persistently been stalking me and instructing potential employers that "Immigration does not want you to hire him," it has been impossible for me to be gainfully employed, make enough money and realize this dream.

**I made four separate visa petitions for a change of status.** It is therefore, an error on the part of the INS Director to claim that:

> "Further, there is no evidence on record which would indicate that a visa petition had ever been approved on your behalf, which would have been a prerequisite for approval of adjustment of status under sec. 245 of the Act. 8 U.S.C. 1255."

This is why I decided to ask for a copy of the SAW program Application (form I-700) filed July 14, 1988 and Form I-485 filed between July 1990 and Jan. 1991 under the provisions of the Freedom of Information Act (FOIA). That way, I can find out whether or not the information on my form I-700 as reported by the May 12, 1998 interviewer, Dorfman, is the same as what is on the

original copy at the Hialeah INS Office in Florida. It can similarly be established whether or not I mistook form I-485 for form I-90. Unfortunately, up to the time I am writing, copy of form I-485 is still to be provided by the INS.

13. **Other Matters: Good Moral Character, 8 C.F.R. 316.10**
To the best of my knowledge, I have not violated any of the 22 conditions listed under section 316.10 of the Code of Federal Regulations.
(C.F.R., Title 8: Aliens and Nationality, Revised Jan. 1, 1997); U.S. Dept of Justice, Immigration and Naturalization Service. Naturalization Requirements and General Information. Form N-17 (Rev. 11/30/92)N: Character and Loyalty pp. 13-14).

14. The **Racial Bias and other Discrimination Argument:**
Although I never lived in or used any Mattapan address since I started dealing with the Boston INS Office, the the decision letter was mailed to a Mattapan address. It can be argued that the mistake was intentional because of racial bias. Someone probably did it so that I would miss the opportunity of a court review.

   The fact that some form of inefficiency, error or intentional mistake occurred in spite of the fact that I submitted a complete list of my current and previous addresses to the Boston INS Office, makes one also to suspect that the document was probably prepared and signed under **duress** (similar to what happens when one is forced to make certain decisions under conditions of fear, intimidation, blackmail or threat of death by the "mafia").

- Also, there is a group, I suspect, among the INS Officers or workers in Boston who favor using harlots in spite of the fact that the immigration regulations are against it. Those individuals often find a way to hurt candidates who do not use or like harlots because of their exposure to sexually transmitted diseases including AIDS. Another way to put it is that there is an influential group of harlots in or around Boston Immigration Office who may be using their positions to jeopardize citizen candidates' interests. Those who refuse to harlot with them are victimized by either taking their names off the list of eligible candidates or they are unnecessarily delayed.

- There are also indications that there are some influential people in and around the INS Office who appear to be ex-convicts and who seem to be using their influence to block or victimize applicants who never went to prison.

- I also suspect that there are people at the Boston INS Office who came from Nigeria during Nigeria's 1966-1970 Civil War. These individuals are prejudiced against other Nigerians in the country, especially those of us who are seeking naturalization/citizenship status in this country. These former "rebels" from the Eastern section of Nigeria, are doing everything they can to sabotage our efforts to become citizens of this country. Since 1993, when I started to process my application, an elderly black guy has been falsely claiming to be my father while stalking and blackmailing me to prospective employers. In 1996, this individual blocked me from being interviewed for the position of Adjudications Officer when he told the lady scheduled to interview me that "The mafia wants him;" "He won't naturalize." The lady who had earlier been expressly excited to do the interview later refused to do the interview saying "no one will give him any interview if he won't naturalize." I later complained in writing to the Eastern Regional Adjudications Office in Vermont about the discriminatory treatment.

  As a result of this blackmail, I have not been able to work on a regular basis since 1995. I have to subsist on Social Security Disability. I suspect that the man originally came from Nigeria as a refugee. When, in 1997, I realized what he was doing to hurt me, I wrote a letter to complain to the INS Office in Boston. I thought he had stopped the blackmail. However, when recently I applied for a position at Radio Shack, the District Manager confirmed that the guy continued to blackmail me. The District Manager even promised to stop him. I don't know whether or not he continued the blackmail in spite of my complaint, because of my letter or because of his bias due to the fact that he is ineligible to apply for naturalization because of his status (e.g. previous criminal convictions). Such an individual should not be allowed to decide my fate in naturalization proceedings because of his hatred and prejudice.

- The interviewer, Mr. DORFMAN, may have been biased by the large number and character of people ((black, white, Asian or spanish) from the community in which I live who continue to follow me around - either to seek information, or to blackmail me for not engaging (with them) in harloting and other criminal activities such as drug trafficking, peddling and abuse (group pressure) or those who follow in order to learn how to proceed from their current status to citizenship/naturalization as well as those who follow in order to report my mistakes to the immigration authorities) - by mistaking all of them for criminals.

-12-

15. **An Appeal:** I am also praying the court to appeal to the Boston INS Office, to increase its education of the public on the process of naturalization and citizenship. A large section of the people in this community is ignorant of this process. Some of the people who live here believe that naturalization applicants who are unsuccessful are murdered by the INS. Some even believe that they may be doing the INS a favor if they murder or lynch unsuccessful applicants. If all unsuccessful applicants are murdered, what should happen to criminals illegal aliens and residents who fail to apply?

16. **Summary:**
In summary, I submit, your honor, that:

- I took every legal step possible to ensure that my status remains lawful. I took advantage of the SAW Program to change my status to Temporary Resident before my visa expired in 1988. To the best of my knowledge, I did nothing wrong, illegal or fraudulent during this process.

- The Director and the Adjudications Officer erred when they used the information on my form I-700 in violation of the **Statutory Guarantee of Confidentiality and Protection of SAW applicants who sought help from Qualified Designated Entities** (QDEs) in accordance with INA sections 245A(C)(4) and 245A(C)(5).

- By attacking the legality of my Temporary Resident Status and using the same to deny my naturalization application more than ten years after it was approved, the INS Director violated the five-year statute of limitations. "A rescission proceeding is governed by a five-year statute of limitations."
Fulgencio v. INS., 573 F.2d 596, 599 (@ 598).
8 U.S.C. sec. 1256(a).

- Similarly by attacking the legality of my Lawful Permanent Resident Status and using the same to deny my application for naturalization nine years after it was granted, the INS Director also violated the five-year statute of limitations.
"After five years, the alien's status is unassailable."
  Quintana v. Holland, 255 F.2d 161, 164 (3d Cir. 1958).

**Conclusion: Burden of Proof, 8 C.F.R. 336.2(b)**
I believe that I have sufficiently established, with a preponderance of evidence that I was lawfully admitted as a permanent resident to the United States, in accordance with the immigration laws in effect as of December 01, 1990 when I became a lawful permanent resident. I have thus fully established that I was lawfully admitted into the United States in accordance with sections 316 and 318 of the Immigration and Nationality Act. 8 U.S.C. 1427 and 1429.

-13-

I believe that I have met the conditions enumerated under 8 C.F.R. 316.10. I also, believe that the INS Director violated the provisions of the statutory guarantee of confidentiality and protection for SAW applicants who sought help from Qualified Designated Entities. The INS Director also violated the provisions of the five-year statute of limitations. "After five years, the status of the alien is unassailable."

Thank you.

**NAME**: FATUROTI, Michael Abiodun    **ALIEN NO**: A-91985991

**SIGNATURE**: _[signature]_                          **DATE**: Feb. 02, 1999.

**References:**
1. Federal Register Vol. 52, No. 40, March 2, 1987.
2. Federal Register Vol. 52, No. 58, March 26, 1987.
3. Interpreter Releases, Vol 64, No. 9, March 2, 1987.
4. Sara Reinhardt with Lory D. Rosenberg. Immigration Law Library. 1988 Law Handbook. How To Obtain Lawful Residence Under the New Immigration Laws By the National Immigration Project of the National Lawyers Guild. Clark Boardman Company, Ltd.
5. Board of Immigration Appeals Vol. 17, 1980.
6. Thomas Alexander Aleinikoff, David A. Martin & Hiroshi Motomura. Immgration Process and Policy. 3rd Edition. American Casebook Series. St. Paul, MN 1995.
7. Maurice A. Roberts & Stephen Yale-Loehr. Understanding the 1986 Immigration Law. A Practical Analysis. 1st Edition, 2nd Printing. Federal Publications Inc. 1987.
8. 1996-97 Immigration & Nationality Law Handbook. Volume I Immigration Basics. Volume II Advanced Practice. American Immigration Lawyers Association 1996.
9. 1997-98 Immigration & Nationality Law Handbook. Voulme I Immigration Basics. Volume II Advanced Practice. American Immigration Lawyers Association 1997.