UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MICHAEL A. FATUROTI,<br>          Petioner,<br><br>v.<br><br>IMMIGRATION AND CUSTOMS<br>ENFORCEMENT,<br>          Respondent. | )<br>)<br>)        Civil Action No.<br>)        04-11791-MJD<br>)<br>)<br>)<br>)<br>)<br>) |

### UNITED STATES' RESPONSE TO THE PETITIONER'S REQUEST FOR JUDICIAL REVIEW OF THE DENIAL OF NATURALIZATION AND REQUEST FOR AN ORDER OF THIS COURT DIRECTING THE PETITIONER TO APPEAR FOR FINGERPRINTING AND A NATURALIZATION INTERVIEW

**Introduction**

The Petitioner, Micahel Faturoti, has petitioned this Court for review of the denial of his naturalization petition by immigration officials pursuant to 8 U.S.C. §1421(c). The Respondent[1] provides the following memorandum of law in support of the motion for an order directing the Petitioner to submit to fingerprinting and a naturalization interview.

For the reasons stated herein, in the unusual circumstances of this matter, Respondent requests that the Petitioner be required to re-appear for fingerprinting and a naturalization interview prior to any hearing before this Court.

---

[1] Contrary to the Petitioner's assertion in his most recent letter dated, January 6, 2005, that the United States Attorney was without standing in this matter, the United States Attorney is statutorily authorized to appear on behalf of the United States, both in naturalization proceedings before immigration officials, and in any matter before the District Courts of the United States. See 8 U.S.C. § 1447(c) and 28 U.S.C. § 517.

**Applicable Statutes And Regulations**

A.    <u>Judicial Naturalization Prior to 1990</u>

Until 1990, United States District Courts sat as naturalization courts and were vested with exclusive jurisdiction to pass upon the qualifications of an applicant for naturalization and to naturalize aliens as citizens of the United States. <u>See</u> 8 U.S.C. §§ 1101(a)(24), 1421(a) (repealed 1990); <u>see also</u> <u>Shomberg v. United States</u>, 348 U.S. 540 (1955); <u>United States v. Waskowski</u>, 158 F.2d 962 (7th Cir. 1947). Under this two-tiered system, the applicant submitted a preliminary naturalization application to the INS, which conducted a preliminary investigation of the applicant and made a non-binding recommendation to the district court as to whether the application should be approved or denied. <u>See</u> 8 U.S.C. § 1445(b), 1446(b), (d) (repealed 1990); 8 C.F.R. §§ 334.11, 335.11-.13 (1990). The actual decision to approve or deny the naturalization application was vested solely with the federal court, which took jurisdiction based on a petition filed by the applicant and administered the oath of allegiance. 8 U.S.C. §§ 1421, 1445, 1447, 1448 (repealed 1990).

B.    <u>Enactment of 1990 Amendments Transferring Naturalization From Courts to The Department of Homeland Security</u>

In 1990, Congress enacted the Immigration Act of 1990, Pub. L. No. 101-649, § 401, 104 Stat. 4978 ("IMMACT"), which overhauled the naturalization process in favor of a one-tier administrative procedure. The central purpose for this shift to an administrative naturalization process from a judicial one was to reduce the waiting time for eligible naturalization applicants, who encountered unwarranted delays because of the two-tiered process and the backlogs in many federal courts. <u>See</u> 135 Cong. Rec. H4539-02 (July 31, 1989) ("the current system is one which requires a two-step process, one within the Immigration and Naturalization Service, and

second, in the U.S. district court, and this legislation is directed to change that process and to create a one-step option which will allow citizenship to be more expeditiously provided to those who qualify") (statement of Rep. Morrison), 1989 WL 182156, *H4542; H. R. Rep. No. 101-187, at 8 (1989) (statement of Rep. Morrison); see also H.R. Rep. No. 102-287, at 4, reprinted in 1991 U.S.C.C.A.N. 1362, 1363 ("The 1990 Act was intended to streamline the citizenship process, which had been plagued by extensive delays . . . . The causes of the delays were twofold: First, duplicative paperwork resulting from overlapping administrative responsibilities between the courts and INS; and second, the occasional inability of some courts to hold timely oath-taking ceremonies due to crowded dockets.").

In IMMACT § 401, Congress transferred the power to naturalize from the district courts and vested the Attorney General – now the Secretary of the Department of Homeland Security ("DHS")[2] – with "sole authority to naturalize persons as citizens of the United States." See 8 U.S.C. § 1421(a). Under the administrative naturalization process, the Bureau of Customs and Immigration Services ("CIS") is responsible for adjudicating naturalization applications, including rendering a preliminary investigation of the applicant, conducting an examination, and making a determination as to whether to grant or deny the application. See 8 U.S.C. § 1446(a), (b), (c). To implement the statutory directive, DHS has established regulations governing the naturalization process. See 8 C.F.R. §335.1 et seq. Those regulations provide, inter alia, for investigation of the applicant including a criminal history check and interview. 8 C.F.R. §335.2.

---

[2]The transfer of the former INS's naturalization functions to the newly-created DHS, included the transfer of the authority to naturalize from the Attorney General to the Secretary of DHS. See Homeland Security Act of 2002, Pub. L. No.107-296, § 1512(d), 116 Stat. 2135, 2310.

If CIS initially denies a naturalization application, the applicant may seek administrative review of the denial by requesting a hearing before a supervisory immigration officer. 8 U.S.C. § 1447(a); 8 C.F.R. § 336.2(b).

While vesting the primary naturalization authority with the Secretary of DHS, however, Congress did not completely eliminate the district court's jurisdiction over the naturalization application process. For example, the district courts may still administer the citizenship oath of allegiance. 8 U.S.C. § 1421(b)(1). The district courts also have jurisdiction to review *de novo* applications for naturalization denied as a result of the administrative review procedure under § 1447(a). 8 U.S.C. § 1421(c). Finally, under 8 U.S.C. § 1447(b), the applicant may apply to the appropriate district court for a hearing on the naturalization application if the INS does not grant or deny the application within 120 days after the naturalization interview. In such case, the court "may either determine the matter or remand the matter, with appropriate instructions, to [CIS] to determine the matter." 8 U.S.C. § 1447(b).

C.   Naturalization Criteria

The criteria for naturalization are established by 8 U.S.C. §1427. That statute provides, in relevant part:

> No person, except as otherwise provided in this subchapter, shall be naturalized unless such applicant, (1) immediately preceding the date of filing his application for naturalization has resided continuously, after being lawfully admitted for permanent residence, within the United States for at least five years . . . (2) has resided continuously within the United States from the date of the application up to the time of admission to citizenship, and (3) during all the periods referred to in this subsection has been and still is a person of good moral character, attached to the principles of the Constitution of the United States, and well disposed to the good order and happiness of the United States.

8 U.S.C. §1427(a). Congress has defined "good moral character" to exclude certain classes of

criminal aliens. 8 U.S.C. §1101(f). The burden of proof as to all of the elements is upon the individual seeking naturalization. 8 U.S.C. §1429.

### Factual and Procedural Background

Faturoti was admitted to the United States in 1979 on a student visa. See Naturalization Decision, dated September 11, 1997, attached hereto as Exhibit 1, p. 2. From that time, through 1988, the student visa was extended seven times. Id. In July of 1988, Faturoti submitted an application for Special Agricultural Worker ("SAW") status.[3] In that application, Faturoti averred that he had "picked green beans" for Mr. Arthur Broadnax" at "Leon McNally Farm, Dade County Florida" from "8/85 to 4/86." See Decision Denying Appeal of Naturalization Decision, dated November 9, 1998, attached hereto as Exhibit 2, p. 1. Based upon the SAW application, Faturoti was granted temporary resident, and later, permanent resident, status. Exhibit 1, p. 2.; Exhibit 2, p. 1.

Faturoti applied for naturalization in or around December 1995, and he was interviewed in connection with that application on March 18, 1996. See Petition for Judicial Review, p. 1.;

---

[3]In 1986, Congress undertook to draft legislation to account for the fact that millions of illegal immigrants had been living and working in the United States for several years and amended the Immigration and Naturalization Act to legalize the immigration status of certain categories of these aliens. One category of such aliens was migrant agricultural workers for whom Congress created the "Special Agricultural Worker" or "SAW" program. H.R. Rep. 99-682(I), at 83-85 (1986), reprinted in 1986 U.S.C.C.A.N. 5649, 5687-89.
   Under the SAW program, a worker could apply for "temporary resident" immigration status during a specified eighteen-month period if he could prove both that he has resided in the United States and that he performed "seasonal agricultural services" in the United States for at least ninety days during the period from May 1, 1985, to May 1, 1986. See 8 U.S.C. § 1160(a)(1). After a fixed period of either one or two years, depending on the number of applicants, those temporary resident workers would automatically receive permanent resident status. Id. at § 1160(a)(2).

see also, Exhibit 1.[4]

In the course of the naturalization review, Faturoti admitted that the information contained in the "SAW" application was false. Exhibit 2, p.1. Indeed, his Application for Naturalization indicates that between 1985 and 1986, Faturoti was working in Boston, at the Hunneman Real Estate Company, not in Florida. Exhibit 1, p. 2; see also Naturalization Application, p. 2, attached hereto as Exhibit 4. Further, at his interview, Faturoti conceded that he had only spent 24 hours in Florida, and, in fact, had traveled there only to execute the paperwork submitted in connection with his fraudulent "SAW" application. Exhibit 2, p. 1; see also Notice of Appeal of the September 11, 1997, Decision Denying Naturalization, p. 1, attached hereto as Exhibit 5.[5]

Based upon the fraudulent submission of a SAW application, the Petitioner's request for naturalization was denied, initially, on September 11, 1997, and upon administrative appeal, on November 9, 1998. See Exhibits 1 and 2. As grounds for the denial, immigration officials concluded that Faturoti had failed to meet his burden of establishing that he had been "lawfully

---

[4]On October 27, 1997, Faturoti petitioned the district court for review. See Docket #97-MC-10605, #1; and #8, Order of the District Court dated March 27, 1998, attached hereto as Exhibit 3. Since the INS had issued an initial decision denying the application on September 11, 1997, see Exhibit 1, the District Court dismissed the action, without prejudice, to allow Faturoti to pursue an administrative appeal. See Exhibit 3.

[5]"The main reason for applying for the SAW program when I did was to be able to continue to work to pay for my education after my sponsor, Nigerian Institute of Social & Economic Research, had in 1986 terminated my fellowship and Northeastern University had advised me to withdraw from the Doctorate Program. It was a temporary measure I took to ensure that I continued to maintain a legal status in the country. . . . I took the step to forestall the possibility of visa cancellation by the INS. . . . I was an exchange student on J-1 visa working with Employment Authorization whose visa was about to expire. *The INS claim that I did not work for at least 90 days in agriculture is accurate.*"

admitted" to the United States in accord with 8 U.S.C. §§ 1427 and 1429. Id.

The Petitioner filed the instant petition for judicial review on or about February 10, 1999. It does not appear that the Petition was appropriately served pursuant to Fed. R. Civ. P. 4, and it does not appear that any action was taken on the petition until July 24, 2004, when it was reassigned to this Court. See Docket#97-MC-10605- NG, #24.

### Petitioner's Contention On Appeal

By way of error, Mr Faturoti contends, *inter alia*, that in denying his application for naturalization, immigration officials improperly relied upon information contained in his application for temporary resident status under the SAW program. He points out that the statute provides that DHS may not "use the information furnished by the applicant pursuant to an application filed under this section for any purpose other than to make a determination on the application. . . ."  8 U.S.C. § 1160(b)(6)(A)(i).

### ARGUMENT

At the outset, the Respondent acknowledges that, absent statutory ineligibility, Petitioner is entitled to a *de novo* hearing before this Court as to his naturalization application pursuant to 8 U.S.C. §1421(c). At issue, *inter alia*, will be whether immigration officials could permissibly rely upon the admittedly fraudulent application. In the unusual circumstances of this matter, however, the Respondent nevertheless moves for an order directing the Petitioner to appear for fingerprinting and an immigration interview as such process is necessary to comply with the statutory directive of Congress.

In addition to the questions underlying this appeal, *i.e.*, whether immigration officials appropriately denied the Petitioner's application in 1997, the relevant statute and applicable

regulations require that the Petitioner maintain "good moral character" between the time of examination and the time that the oath of allegiance is sworn.  See 8 U.S.C. §1427(a)("No person, except as otherwise provided in this subchapter, shall be naturalized unless such applicant, . . . . during all the periods referred to in this subsection *has been and still is* a person of good moral character . . .") (emphasis added);  8 C.F.R. §316.10(a)(1) ("An applicant for naturalization bears the burden of demonstrating that, during the statutorily prescribed period, he or she *has been and continues to be* a person of good moral character.  This includes the period between the examination and the administration of the oath of allegiance.") (emphasis added).[6]

Thus, the relevant statutes and regulations unequivocally make relevant to this Court's inquiry also whether the Petitioner has *maintained* eligibility for naturalization during the more than five years since this petition for review was filed.   Stated another way, this Court could determine that the immigration officials wrongfully denied the Petitioner's application based upon the Petitioner's arguments; however, this Court  would be bound by statute to determine if the Petitioner is "still is a person of good moral character."  8 U.S.C. §1427.  Regardless of the merit of this Petitioner's underlying claims of error, this Court cannot grant naturalization without having undertaken, in some fashion,[7] to determine whether the Petitioner has remained a person of good moral character during the period between his application and any hearing before this Court.

---

[6]Indeed, applicable regulations expressly provide for revocation of a grant of naturalization, prior to the oath being sworn, where DHS becomes aware of information that would preclude naturalization.  See 8 C.F.R. §335.5.

[7]The statute does not specify how the Court would make such a determination on *de novo* review.

Such a request would ordinarily be unnecessary as the statutory scheme contemplates substantially more expeditious review. <u>See</u>, <u>e.g.</u>, 8 U.S.C. § 1447(b)(allowing the applicant to seek judicial review if the INS does not grant or deny the application within 120 days); and 8 C.F.R. § 336.9 (requiring a petition for judicial review to be filed within 120 days of a final agency decision). Given that more than five years have now passed since the original criminal history background check undertaken in connection with the Petitioner's application for naturalization in 1996, the Respondent requests that the Petitioner be re-fingerprinted and re-interviewed by immigration officials for purposes of evaluating the Petitioner's continued eligibility for naturalization. <u>See</u> 8 U.S.C. §1101(f)(defining "good moral character" to exclude certain classes of criminal aliens); and 8 C.F.R. §335.2 (requiring an FBI criminal history check and interview prior to naturalization). Should such a review reveal a conviction for an aggravated felony, or other specified crime, the Petitioner would be statutorily ineligible for naturalization and not entitled to a hearing.

In the present circumstance where more than five years have passed since the criminal background check undertaken in this manner, Respondent believes that the relief requested by way of this motion is the most expeditious manner of insuring that the hearing may proceed in a fashion consistent with the statutory directive of 8 U.S.C. §1427. Similarly, the existence of a criminal history could preclude eligibility for naturalization and obviate the need to resolve the underlying legal disputes in this matter.

Wherefore, the Respondent requests that the motion be allowed.

> Respectfully submitted,
> MICHAEL J. SULLIVAN
> United States Attorney
>
> /s/ Mark J. Grady
> MARK J. GRADY
> Assistant U.S. Attorney
> U.S. Attorney's Office
> John Joseph Moakley U.S. Courthouse
> 1 Courthouse Way, Suite 9200
> Boston, MA  02210
> Tel. No. (617) 748-3136

**Certificate of Compliance**

I hereby certify that on January 5, 2005, I spoke to Petitioner Faturoti concerning resolution of this matter and proposed that the matter be remanded to CIS, Petitioner be re-interviewed and re fingerprinted and that CIS would not rely upon any information contained in the SAW application in reaching a new decision. Petitioner refused to accept this proposed settlement.

> /s/ Mark J. Grady
> Mark J. Grady
> Assistant United States Attorney

**Certificate of Service**

IT IS HEREBY CERTIFIED that on this 31st day of January 2005 service of the foregoing Motion has been made upon the following by depositing a copy in the United States mail, postage prepaid to, Michael Faturoti, PO Box 230013, Boston, MA 02123.

> /s/ Mark J. Grady
> Mark J. Grady
> Assistant United States Attorney