A-91-985-991                    Michael A. Faturoti,
                                P.O. Box 230013,
                                Boston, MA 02123-0013

Sept. 12, 1997                  617 442-7312

The District Director,
Boston Service Center,
U.S. Department of Justice,
Immigration & Naturalization Service,
JFK Federal Building, Room 1700
Government Center,
Boston, MA 02203

Ref.: **Decision On Application For Naturalization of 09/11/97**

I am appealing the Decision on my Application for Naturalization for the following reasons, namely:

1. Even though I applied for a change of status under the Special Agricultural Workers (SAW) Program (INA sec. 210, 8 U.S.C. 1160) in July 1988, I was not granted permanent resident status under the (SAW) Program.*

When I wanted to renew my temporary resident status in 1990, I was told in the Boston District Office that my name did not match my Alien number. I was then advised to transfer my file to the Boston District Office. This was an indication that my application was not approved for the SAW program.

On transfer of my file to Boston, I was advised by a female immigration officer who gave me form I-485: Application for Permanent Residence. SAWs who fully meet the qualifying agricultural employment don't have to apply separately for Permanent Residence. Hence I was lawfully admitted into the country.

The main reason for applying for the SAW program when I did was to be able to continue to work to pay for my education after my sponsor, Nigerian Institute of Social & Economic Research (NISER), had in 1986 terminated my fellowship and Northeastern University had advised me to withdraw from the Doctorate Program.

It was a temporary measure I took to ensure that I continued to maintain a legal status in the country while I looked for alternative avenues to successfully complete the Program. I took the step to forestall the possibility of visa cancellation by the INS. Once the fellowship was terminated, the INS would have refused to renew my visa.

---
* SAWs are "undocumented aliens who have worked harvesting perishable crops in the U.S." (Maurice A Roberts & Stephen Yale-Loehr. Understanding The 1986 Immigration Law. A Practical Analysis. 1st Edition, 2nd Printing. Federal Publications, Inc. 1987 chap. 4, p. 4-4).

I was not an undocumented alien. I was an exchange student on J-1 visa working with Employment Authorization whose visa was about to expire. The INS claim that I did not work for at least 90 man-days in agriculture is accurate.

My application was not approved until I had applied for Permanent Residence: Form I-485 (on the advice of a female immigration officer in the Boston District Office). Eligible SAWs don't have to apply for permanent residence. Therefore, I was lawfully admitted into the country.

Even though 8 U.S.C. section 1160(a)(1)(B) provides that "The alien must establish that he has- (i) resided in the United States, and (ii) performed seasonal agricultural services in the United States for at least 90 man-days."

I believe the emphasis in (ii) is on "work" as a rationale for staying in the country. In view of the fact that I had full-time employment with Hunneman Corp. (1982-93), I never thought it was intelligent and/or useful for me to abandon my full-time job with Hunneman Real Estate Corp. in search of another part-time/temporary employment in agriculture to meet the qualifying employment condition. I believed (I still do) that remaining an employee of Hunneman Corporation would be more beneficial to the economy than to look for an alternative work in agriculture. I believed that working with the Hunneman Company would have equally met the qualifying employment condition.

That female officer who advised me to file the application for Permanent Residence must have understood that there was a problem with my SAW application. She also must have known that there could be more in the future if I did not do so. I am glad I did.

Incidentally, "... unlike replenishment workers, SAWs don't have to continue to work in agriculture to achieve permanent resident status." (Maurice A. Roberts & Stephen-Yale Loehr. op cit p. 4-10; New INA section 210(a)(5)).

Therefore, applying for permanent residence, as advised by the immigration officer, guarantees an alternative lawful admission into the country independent of the SAW Program.

**Title 8 U.S.C. sec. 1160(a)(2) Adjustment To Permanent Residence** provides that:

"The Attorney General shall adjust the status of any alien provided lawful temporary resident status under paragraph (1) to that of an alien lawfully admitted for permanent residence on the following date:

**(A) Group 1**
Subject to the numerical limitation established under subparagraph (C), in the case of an alien who has established, at the time of application for temporary

-3-

residence under paragraph (1); that the alien performed seasonal agricultural services in the United States for at least 90 man-days during each of the 12-month periods ending on May 1, 1984, 1985 and 1986, the adjustment shall occur on the first day after the end of the one-year period that begins on the later of (I) the date the alien was granted such temporary resident status, or (II) the day after the last day of the application period described in paragraph (1)(A).

**(B) Group 2**
In the case of aliens to which subparagraph (A) does not apply, the adjustment shall occur on the day after the last day of the two-year period that begins on the later of (I) the date the alien was granted such temporary resident status, or (II) the day after the last day of the application period described in paragraph (I)(A)." (Aliens and Nationality, 8 U.S.C. section 1160(a)(1)(C)(2)).

This means that when the conditions are met, "a Group 1 SAW will become a lawful permanent resident of the U. S. one year after either (1) the date he or she was granted temporary resident status or (2) December 1, 1988, whichever is later." (Maurice A. Roberts & Stephen Yale-Loehr. op cit. chap. 4 p. 4-11; New INA secs. 210(a)(2)(A) & 210(a)(2)(B)).

From the foregoing two paragraphs, it can be deduced that so long as the alien has met requirements (i) and (ii), the Attorney General shall, other things equal, adjust his status to that of an alien lawfully admitted for permanent residence (i.e. without having to apply separately for permanent residence).

"Once a special agricultural worker has attained temporary resident status, adjustment to permanent resident status should be routine. Under proposed INS regulations, the alien would have to fill out (1) an affidavit stating that he or she has maintained status as a temporary resident, (2) the paperwork to allow issuance of a green card."
(Roberts & Yale-Loehr. op cit p. 4-11; Proposed C.F.R. sec. 210.4(b)(1)).

I am submitting that I was not routinely adjusted to the status of an alien lawfully admitted into the country. I was lawfully admitted in 1990 independent of the SAW Program using form I-485: Application For Permanent Residence on the advice of a Boston District Office immigration officer.

2. **What does the INA say about a documented alien who had a permanent full-time employment when applying for a change of status under the SAW program? Does the law compel such an alien to abandon his current job and take up work in agriculture to meet the qualifying employment condition?**

-4-

The answer to the second question is No. The law is actually silent on the first question. That allows the Director to use his discretion in reaching a decision on the uniqueness of my own situation. In other words, he has to examine what Congressional intent is in passing the law. If the intent is unclear, he will examine other relevant conditions to reach a decision. It is my honest belief that full-time employment with any company, Hunneman inclusive, equally fulfills the qualifying employment condition.

3. **Admissibility as an Immigrant**
   I am a specialist: a professional paralegal and legal researcher, a creative writer, a professionally trained teacher and economist. That's why I registered through the Department of Education as a professional, using form N-300: Application for Declaration of Intention. As a specialist, I have a lot to contribute to the economic well-being of this country. (Thomas Aleinikoff, David A. Martin & Hiroshi Motomura. Immigration Process and Policy. American Casebook Series. West Publishing Co. 1995, pp. 128-129).

   In addition to (3) above, I meet all the conditions necessary for becoming a permanent resident. I have neither been convicted of a felony nor a misdemeanor. I am not a gambler. I am neither a drug dealer nor a user. I do not encourage or patronize drug dealers, harlots or prostitutes. I am not a member of the communist party. I am not an anarchist. I am not subversive. I am not a criminal. I do not condone, encourage or harbor criminals. I have never lied under oath to benefit under immigration laws. I am not an army deserter. I have not assisted in the persecution of any person or persons on account of race, religion, nationality, membership in a particular social group, or political union. I am not an alcoholic. I have met the literacy and education requirements (i.e. "knowledge and understanding of history and government of the U.S. and English Language" according to the provisions of sec. 312 of the INA). I have never done anything to violate the immigration laws. (Roberts & Yale-Loehr. op cit. chap. 4, pp. 4-9 & A-38).

4. Regarding my exchange student status and the regulation which forbids exchange students from changing status, I was left with no alternative than to change status when in 1986, my fellowship was terminated. That was the only way I was able to work and pay my way through successful completion of the Doctorate Program. I contacted the Institute (NISER) in 1991 immediately I completed the program but I was refused the air-fare to return home to Nigeria. I wrote to the Secretary of the International Office For Migration (IOM) for help but I was told that Nigeria was not a member. Hence I could not be helped.

In November 1994, I was advised by the Secretary of NISER that the Institute has no intention to re-absorb me. If I am forced to return to Nigeria at this time without a job, I may be subjected to extreme economic hardship. (Aleinikoff, Martin & Motomura. Immigration Process & Policy. American Casebook Series. West Publishing Co. MN. 1995, pp. 655-657). I may also be persecuted for failing to return in 1986 when my fellowship was terminated.

NISER's letter of 1994 not only indicates that the Institute does not intend to re-absorb me, it also implies that it does not object to my continued stay in the United States. It is also an indication that neither NISER, my sponsor, nor Nigeria, my home country, seems to suffer any shortage of manpower or skills.

Besides, it seems that the "Two-year Home Residence Requirement of J-1 Visa Status" is mandatory only for physicians or Foreign Medical Graduates. (Immigration & Nationality Law Handbook. Volume II Advanced Practice. American Immigration Lawyers Association, 1996 pp. 161-163).

5. If the above reasons are not enough, I am appealing to the District Director, for an Opportunity for Waivers:*

(a) **For humanitarian purposes:** It's part of the U.S. policy to show mercy and allow otherwise excluded applicants to naturalize to demonstrate its magnanimity. If I am forced to return to Nigeria, I may be subjected to persecution in view of the fact that NISER, my original sponsor already informed me of its unwillingness to re-absorb me. Without a job, I may face extreme economic hardship. Similarly for my family.

(b) **For family unity:** All my children here are below age 18. They'll need a lot of help to be able to make it through to college. Granting my application will give me the right opportunity to help them through college so as to prevent them from extreme hardship. They know no other country besides the U.S. (Aleinikoff, Martin & Motomura, op cit. pp. 655-657).

(c) **In the public interest:** Besides, I am trying to nurse a brand newly incorporated company name into business. I am doing this to ensure that I have another alternative, in case of the possibility that I do not have the type

---

* "SAW applicants for permanent residence found to be excludable, but not deportable, may apply for a waiver under INA sec. 210(c), and may be adjusted to the status of a lawful permanent resident." (Sarah Reinhardt with Lory D. Rosenberg. Immigration Law Library 1988 Legalization Handbook. How To Obtain Lawful Residence Under The New Immigration Laws by The National Immigration Project of The National Lawyers Guild. Clark Boardman Co., Ltd. Chap. 13 sec. 13.2(c), pp. 13-18 to 13.20).

-6-

of employment I dreamed of. Granting my application for
naturalization will, no doubt, afford me the opportunity
to make enough money to get it through the teething
stages. I will also be able to support my family and get
my children through to college.

However, I am confident that as a trained professional,
I will be able to obtain useful gainful employment through
which I can make tremendous contributions to the economic
progress of my community as well as to the country, if my
application is granted. (Sarah Reinhardt with Lory D.
Rosenberg. op cit. Chap. 11, Secs. 11.1(a), 11.1(b)(1),
11.1(b)(2), 11.1(b)(3), and 11.2 p. 11-11).

Finally, I submit that my status was changed twice, each
independent of the other: July 1988, the SAW program and,
December 1990, on Application for Permanent Residence
(form I-485) when I was lawfully admitted into the country.

In summary, therefore, I submit that:

(i) I had full-time employment when I registered under the
SAW program in a desperate effort to save my legal
status in the country because my exchange student status
visa was about to expire without the possibility of a
renewal even though I had not been able to successfully
complete my educational program. NISER, my sponsor had
terminated my fellowship in 1986 thus leaving me no
choice other than to look for an alternative way to
successfully complete my program. I had to work and pay
my way at Northeastern University for 2 academic years.

(ii) I couldn't risk losing my full-time employment for a
temporary or part-time agricultural employment to meet
the qualifying employment condition.

(iii) The Immigration & Nationality Act a.k.a. Immigration
Reform and Control Act of 1986 is silent on the case
of a documented alien who had a full-time job when
applying for the SAW program. There is no provision in
the Act to force SAW applicants to abandon current
jobs to fulfill the qualifying employment condition.

(iv) The Two-year Foreign Residence Requirement is mandatory
only for Foreign Medical Graduates. Besides, my sponsor
has decided not to re-absorb me, an indication that (1) my
services are no longer needed; (2) neither NISER nor
Nigeria suffers any manpower shortage; (3) Nigeria does
not object to my continued stay in the U.S.

(v) "SAW applicants for permanent residence found to be
excludable, but not deportable, may apply for a waiver.
I believe that I am not deportable because I am not
guilty of any of the 20 categories of offenses listed in
chap. 13, sec. 13.2(c), pp. 13-18 through 13-21 of Sarah
Reinhardt with Lory D. Rosenberg. op cit. Therefore,

-7-

    I am asking the Director to grant my application for naturalization.

(vi) With my academic achievements, I could belong to one or more of the five categories of aliens mentioned under the Employment-based Immigration as provided under the 1990 Immigration Act, P. L. #101-649, 104 Stat. 4978; INA secs. 203(b), 101(a)(44), 101(a)(27)(C)-(J) & 216A. I hope the Director will find it in his heart to grant my application for naturalization.

With this, I believe I have demonstrated by a preponderance of evidence that my case is unique. That I was lawfully admitted into the country independent of my SAW Program application. "The INS has no discretion to deny legalization to a SAW who is otherwise qualified." (Roberts & Yale-Loehr. op cit. p. 4-6, note 72). I met all necessary qualifying conditions for permanent residence. I have been of good moral character.

THANK YOU.

Enclosed: Copy of NISER's letter of November 1994.

**References:**
1. Thomas Aleinikoff, David A. Martin & Hiroshi Motomura. Immigration Process and Policy. 3rd Edition. American Casebook Series. West Publishing Co. St. Paul, MN. 1995.

2. Maurice A. Roberts & Stephen Yale-Loehr. Understanding The 1986 Immigration Law. Apractical Analysis. First Edition, 2nd Printing. Federal Publications, Inc. 1987.

3. Sarah Reinhardt with Lory D. Rosenberg. Immigration Law Library 1988 Legalization Handbook. How To Obtain Lawful Residence Under The New Immigration Laws. National Immigration Project of The National Lawyers Guild. Clark Boardman Company, Ltd. 1988.

4. Ramon Carrion. U.S.A. Immigration Guide. Sphinx Publishing, 1992.

5. 1996-97 Immigration & Nationality Law Handbook Volume 1 Immigration Basics. American Immigration Lawyers Association, 1996.

6. 1996-97 Immigration & Nationality Law Handbook Volume 2 Advanced Practice. American Immigration Lawyers Association, 1996.

7. Ira J. Kurzban. Kurzban's Immigration & Nationality Law Sourcebook. 4th Edition. A Comprehensive Outline & Reference Tool. American Immigration Law Foundation 1994.