UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MICHAEL A. FATUROTI, )<br>)<br>Petitioner, )<br>v. )<br>)<br>IMMIGRATION AND CUSTOMS )<br>ENFORCEMENT, )<br>)<br>Respondent. ) | CIVIL ACTION<br>NO. 04-11791-NG |

**REPORT AND RECOMMENDATION ON**
**RESPONDENT'S SECOND MOTION TO DISMISS**

October 19, 2005

DEIN, U.S.M.J.

## I. INTRODUCTION

The petitioner, Michael A. Faturoti ("Faturoti" or "Petitioner"), has petitioned the court for review of the denial of his naturalization petition by immigration officials pursuant to 8 U.S.C. § 1421(c). In response, the Respondent sought and obtained an order from this court directing the Petitioner to submit to fingerprinting and a naturalization interview. While Faturoti has been fingerprinted, he failed to appear for an interview despite several court orders.

This matter is presently before the court on the "Respondent's Second Motion to Dismiss, or for Other Appropriate Sanction, for Failure to Comply with this Court's Order" brought pursuant to Fed. R. Civ. P. 41(b). (Docket No. 24). For the reasons

detailed herein, this court recommends to the District Judge to whom this case is assigned that the Motion to Dismiss be DENIED WITHOUT PREJUDICE.

## II.  STATEMENT OF FACTS

Unless otherwise indicated, the following background facts are as alleged in the Petition for Judicial Review ("Pet."). (Docket No. 1). In July, 1988, Faturoti applied for a change of status from a non-immigrant to a temporary resident under a Special Agricultural Worker ("SAW") Program. (Pet. p. 1, ¶ 1). He became a temporary resident on July 15, 1988. (Id.). Faturoti then applied to be a permanent resident, and became a lawful permanent resident on December 1, 1990. (Id. ¶ 2). In December, 1995, Faturoti applied for naturalization. (Id. ¶ 3).

On March 18, 1996, Faturoti underwent a citizenship interview, and his application for naturalization was thereafter denied on the grounds that he failed to meet the requirements of the SAW program. (Id. ¶ 4). Specifically, Faturoti admitted that the information contained in his SAW application to the effect that he had been working picking beans in Florida from August 1985 to April 1986 was false, and that, in fact, he had been working in Boston at the Hunnenan Real Estate Co. (Resp. Ex.[1] 2 at 1). His application was therefore denied on September 11, 1997 as follows:

> The applications and records which you presented to INS in support of your non-immigrant status and your request for naturalization are conclusive that your receipt of resident status as a Special Agricul-

---

[1] Respondent's Exhibits ("Resp. Ex.") are attached to the United States' Response to the Petitioner's Request for Judicial Review. (Docket No. 8).

> tural Worker was not lawful. You have not met your burden of establishing that you have met all of the requirements for naturalization, which requirements include establishing that you were lawfully admitted to the United States in accordance with the immigration laws. 8 C.F.R. 316.2(b).

(Resp. Ex. 1 at p. 2). Faturoti filed an administrative appeal. (Resp. Ex. 2). Among the grounds Faturoti raised in his appeal was that his application should not have been considered under the SAW program since he was not granted permanent resident status under that program. (See Resp. Ex. 5). Faturoti's appeal was denied on November 9, 1998. (Resp. Ex. 2). As detailed therein, "the record conclusively shows that [Faturoti] obtained [his] residence status in this country by fraud" as a result of which his application for naturalization was denied under 8 C.F.R. § 316.10. (Id.).

Faturoti filed his Petition with this court on or about February 10, 1999. According to the Respondent, the Petition was not appropriately served pursuant to Fed. R. Civ. P. 4, and no action was taken on the Petition until July 24, 2004, when it was assigned to Judge Gertner's session.

### Respondent's Request for an Interview

On January 31, 2005, the Respondent United States filed a "Response to Petitioner's Request for Judicial Review of the Denial of Naturalization and Request for an Order of this Court Directing the Petitioner to Appear for Fingerprinting and a Naturalization Interview" ("Resp."). (Docket No. 8). Therein, the government describes Faturoti's claim on appeal as being that "immigration officials improperly relied upon information contained in his application for temporary resident status under the SAW

program" because under 8 U.S.C. § 1160(b)(6)(A)(i), the information in his SAW application may not be used "for any purpose other than to make a determination on the application." (Resp. at p. 7). Thus, this court had to determine "whether immigration officials could permissibly rely upon the admittedly fraudulent application." (Id.). In addition, this court would need to determine whether Faturoti had maintained "good moral character" between the time of his immigration interview and the time when the oath of allegiance is sworn. See 8 C.F.R. § 316.10(a)(1). There are no set guidelines for how the court determines continued good moral character. Since so much time had elapsed between the Petitioner's interview and the present, the Respondent requested the court order that the Petitioner be fingerprinted and appear for an interview, so that the final hearing on the Petition could proceed expeditiously,[2] and because "the existence of a criminal history could preclude eligibility for naturalization and obviate the need to resolve the underlying legal disputes in this matter." (Resp. at 9).

There being no opposition to the Respondent's request, this court, on March 24, 2005, ordered that Faturoti appear for fingerprinting and a naturalization interview within thirty (30) days. (Docket No. 9). Faturoti was fingerprinted on February 2, 2005. (See Docket Nos. 10, 11). An interview was scheduled for April 19, 2005 and while Faturoti did appear on that day (the exact time being unknown), he was not noticed until 4:30

---

[2] Petitioner is entitled to a de novo hearing before the court as to his naturalization application under 8 U.S.C. § 1421(c) unless he is statutorily ineligible for naturalization. (See Resp. at p. 7).

P.M. (See Docket No. 13). By then, it was too late and the interview was rescheduled to April 25, 2005. (Id.). Despite having been given telephone notice by the Respondent of the April 25th interview, Petitioner failed to appear. (Docket No. 14). At the government's request, this court entered an order on April 26, 2005 that Faturoti appear for an interview on May 11, 2005 at 10:00 A.M. (Docket Nos. 14, 15).[3]

Faturoti failed to appear for the interview on May 11, 2005. On May 16, 2005, Respondent moved to dismiss the Petition for failure to comply with this court's order. (Docket No. 18). On May 20, 2005, this court denied the motion to dismiss, without prejudice, and ordered Faturoti to appear for an interview within thirty (30) days. (Docket No. 20). In addition, this court informed him that the failure to comply with the order may result in dismissal of the action. (Id.). The interview was scheduled for June 14, 2005 at 10:00 A.M. (Docket No. 21).

The Petitioner failed to appear for the interview on June 14, 2005, and the Respondent filed its Second Motion to Dismiss on June 15, 2005, which is presently before the court. (Docket No. 24). Faturoti opposed the motion on June 18, 2005, asserting not only that this court lacked jurisdiction to order the interview but also that he had made a mistake and believed that the interview was June 20, 2005. (Docket No. 26).

---

[3] The Petitioner was apparently of the belief that he did not have to comply with this court's orders unless they were confirmed by Judge Gertner, and otherwise misconstrued various court orders. (See, e.g., Docket Nos. 16, 17, 19 & 20). Judge Gertner denied Faturoti's request to reconsider this court's order requiring an interview "since there is no basis to do so." (See May 20, 2005 Docket Entry).

On July 19, 2005, this court ordered that the Respondent file by September 1, 2005 (later extended to September 13, 2005) "any supplemental response to Petitioner's Request for Judicial Review of the Denial of Naturalization it desires to address all the grounds for its opposition other than a lack of proof of continued good moral character. This is to enable this court to address all relevant issues together." (Docket No. 27). Faturoti was to file any supplemental response fourteen (14) days thereafter. (Id.). Faturoti filed responses on July 21, 2005 and September 1, 2005 objecting to the September 2005 dates. (Docket Nos. 28, 30).

On September 13, 2005, the United States filed its response. (Docket No. 32). Therein, the Respondent notified the court for the first time that the legal issue it had identified earlier was no longer a factor in this case. Specifically, Respondent wrote that it "conceded error in the reliance upon information obtained from the SAW application, and absent the court ordered naturalization interview, Respondent is presently unable to identify any additional barrier to Petitioner's naturalization beyond an evaluation of 'good moral character.'" (Id.). On September 19, 2005, the Petitioner filed a motion to ignore the government's response on the grounds, inter alia, that the Assistant U.S. Attorneys are "either disbarred or unauthorized aliens who are ineligible to work in the United States" and this judge "lacks a law degree or a bar license" and is "also an unauthorized alien." (Docket No. 33). Petitioner has offered no support for these charges and the motion was denied.

### III.  ANALYSIS

It is "well within [this court's] discretion" to dismiss this case given the "repeated violations" of this court's orders and this court "having warned plaintiff of the consequences of non compliance." Serra-Lugo v. Consortium-Las Marias, 271 F.3d 5, 6 (1st Cir. 2001).  Nevertheless, in light of the Respondent's belated admission that it acted without authority in denying the petition on the grounds of information in the SAW application, it would, in this court's view, be inappropriate to dismiss the Petition at this time.  It is not this court's role to create grounds for the denial of a naturalization petition.  If the government is seeking evidence as to the Petitioner's criminal history, his fingerprints and other identifying information should be sufficient.

Consequently, this court recommends that the motion to dismiss be denied, albeit without prejudice.  This court recommends that if the motion to dismiss is denied, that this session promptly schedule a status conference and then a hearing on the merits of the Petition.  The scope of the hearing would be defined at the status conference.

Petitioner, however, should understand that "[t]he court has its own interest in securing compliance with its orders."  Id.  Consequently, Faturoti's failure to comply with future orders may result in the dismissal of his Petition.  His challenge to the jurisdiction of this court, and his contention that scheduling orders issued by this court do not have to be followed unless confirmed by the District Judge, are without merit.

## IV.  CONCLUSION

For the reasons detailed herein, this court recommends to the District Judge to whom this case is assigned that the Respondent's Second Motion to Dismiss, or for Other Appropriate Sanction, for Failure to Comply with this Court's Order (Docket No. 24) be DENIED WITHOUT PREJUDICE.[4]

    / s / Judith Gail Dein
Judith Gail Dein
United States Magistrate Judge

---

[4] The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72 any party who objects to these proposed findings and recommendations must file a written objection thereto with the Clerk of this Court within 10 days of the party's receipt of this Report and Recommendation.  The written objections must specifically identify the portion of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with this Rule shall preclude further appellate review. See Keating v. Sec'y of Health & Human Servs., 848 F.2d 271, 275 (1st Cir. 1988); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 604-605 (1st Cir. 1980); United States v. Vega, 678 F.2d 376, 378-79 (1st Cir. 1982); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); see also Thomas v. Arn, 474 U.S. 140, 153-54, 106 S. Ct. 466, 474, 88 L. Ed. 2d 435 (1985).  Accord Phinney v. Wentworth Douglas Hosp., 199 F.3d 1, 3-4 (1st Cir. 1999); Henley Drilling Co. v. McGee, 36 F.3d 143, 150-51 (1st Cir. 1994); Santiago v. Canon U.S.A., Inc., 138 F.3d 1, 4 (1st Cir. 1998).