UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| MICHAEL A. FATUROTI, | ) | |
| | ) | |
| Petitioner, | ) | |
| v. | ) | CIVIL ACTION |
| | ) | NO. 04-11791-NG |
| IMMIGRATION AND CUSTOMS | ) | |
| ENFORCEMENT, | ) | |
| | ) | |
| Respondent. | ) | |

## REPORT AND RECOMMENDATION ON
## RESPONDENT'S THIRD MOTION TO DISMISS

January 19, 2006

DEIN, U.S.M.J.

## I.  INTRODUCTION

The petitioner, Michael A. Faturoti ("Faturoti" or "Petitioner"), has petitioned the

court for review of the denial of his naturalization petition by immigration officials

pursuant to 8 U.S.C. § 1421(c).  A conference was scheduled before this court for

December 14, 2005.  The Petitioner, despite having had notice, failed to appear.  This

was the latest in a series of court orders which the Petitioner disregarded.

This matter is presently before the court on the "Respondent's Third Motion to

Dismiss, or for Other Appropriate Sanction, for Failure to Comply with this Court's

Order" brought pursuant to Fed. R. Civ. P. 41(b).  (Docket No. 37).  For the reasons

detailed herein, this court recommends to the District Judge to whom this case is assigned

that the Motion to Dismiss be ALLOWED.

## II.  <u>STATEMENT OF FACTS</u>[1]

Unless otherwise indicated, the following background facts are as alleged in the Petition for Judicial Review ("Pet."). (Docket No. 1). In July, 1988, Faturoti applied for a change of status from a non-immigrant to a temporary resident under a Special Agricultural Worker ("SAW") Program. (Pet. at 1, ¶ 1). He became a temporary resident on July 15, 1988. (<u>Id.</u>). Faturoti then applied to be a permanent resident, and became a lawful permanent resident on December 1, 1990. (<u>Id.</u> ¶ 2). In December, 1995, Faturoti applied for naturalization. (<u>Id.</u> ¶ 3).

On March 18, 1996, Faturoti underwent a citizenship interview, and his application for naturalization was thereafter denied on the grounds that he failed to meet the requirements of the SAW program. (<u>Id.</u> ¶ 4). Specifically, Faturoti admitted that the information contained in his SAW application to the effect that he had been working picking beans in Florida from August 1985 to April 1986 was false, and that, in fact, he had been working in Boston at the Hunnenan Real Estate Co. (Resp. Ex.[2] 2 at 1). His application was therefore denied on September 11, 1997 as follows:

> The applications and records which you presented to INS in support of your non-immigrant status and your request for naturalization are conclusive that your receipt of resident status as a Special Agricultural Worker was not lawful. You have not met your burden of

---

[1]  Many of these facts are derived from this court's Report and Recommendation on Respondent's Second Motion to Dismiss (Docket No. 34) ("R&R").

[2]  Respondent's Exhibits ("Resp. Ex.") are attached to the United States' Response to the Petitioner's Request for Judicial Review. (Docket No. 8).

establishing that you have met all of the requirements for naturaliza-
tion, which requirements include establishing that you were lawfully
admitted to the United States in accordance with the immigration
laws.  8 C.F.R. 316.2(b).

(Resp. Ex. 1 at 2).  Faturoti filed an administrative appeal.  (Resp. Ex. 2).  Among the

grounds Faturoti raised in his appeal was that his application should not have been

considered under the SAW program since he was not granted permanent resident status

under that program.  (See Resp. Ex. 5).  Faturoti's appeal was denied on November 9,

1998.  (Resp. Ex. 2).  As detailed therein, "the record conclusively shows that [Faturoti]

obtained [his] residence status in this country by fraud" as a result of which his applica-

tion for naturalization was denied under 8 C.F.R. § 316.10.  (Id.).

Faturoti filed his Petition with this court on or about February 10, 1999.

According to the Respondent, the Petition was not appropriately served pursuant to Fed.

R. Civ. P. 4, and no action was taken on the Petition until July 24, 2004, when it was

assigned to Judge Gertner's session.

**Respondent's Request for an Interview**

On January 31, 2005, the Respondent United States filed a "Response to

Petitioner's Request for Judicial Review of the Denial of Naturalization and Request for

an Order of this Court Directing the Petitioner to Appear for Fingerprinting and a

Naturalization Interview" ("Resp.").  (Docket No. 8).  Therein, the government describes

Faturoti's claim on appeal as being that "immigration officials improperly relied upon

information contained in his application for temporary resident status under the SAW

-3-

program" because under 8 U.S.C. § 1160(b)(6)(A)(i), the information in his SAW application may not be used "for any purpose other than to make a determination on the application." (Resp. at 7). Thus, this court had to determine "whether immigration officials could permissibly rely upon the admittedly fraudulent application." (Id.). In addition, this court would need to determine whether Faturoti had maintained "good moral character" between the time of his immigration interview and the time when the oath of allegiance is sworn. See 8 C.F.R. § 316.10(a)(1). There are no set guidelines for how the court determines continued good moral character. Since so much time had elapsed between the Petitioner's interview and the present, the Respondent requested the court order that the Petitioner be fingerprinted and appear for an interview, so that the final hearing on the Petition could proceed expeditiously,[3] and because "the existence of a criminal history could preclude eligibility for naturalization and obviate the need to resolve the underlying legal disputes in this matter." (Resp. at 9).

There being no opposition to the Respondent's request, this court, on March 24, 2005, ordered that Faturoti appear for fingerprinting and a naturalization interview within thirty (30) days. (Docket No. 9). Faturoti was fingerprinted on February 2, 2005. (See Docket Nos. 10, 11). An interview was scheduled for April 19, 2005 and while Faturoti did appear on that day (the exact time being in dispute), he was not noticed until 4:30

---

[3] Petitioner is entitled to a de novo hearing before the court as to his naturalization application under 8 U.S.C. § 1421(c) unless he is statutorily ineligible for naturalization. (See Resp. at 7).

P.M. (See Docket No. 13). By then, it was too late and the interview was rescheduled to April 25, 2005. (Id.). Despite having been given telephone notice by the Respondent of the April 25th interview, Petitioner failed to appear. (Docket No. 14). At the government's request, this court entered an order on April 26, 2005 that Faturoti appear for an interview on May 11, 2005 at 10:00 A.M. (Docket Nos. 14, 15).[4]

Faturoti failed to appear for the interview on May 11, 2005. On May 16, 2005, Respondent moved to dismiss the Petition for failure to comply with this court's order. (Docket No. 18). On May 20, 2005, this court denied the motion to dismiss, without prejudice, and ordered Faturoti to appear for an interview within thirty (30) days. (Docket No. 20). In addition, this court informed him that the failure to comply with the order may result in dismissal of the action. (Id.). The interview was scheduled for June 14, 2005 at 10:00 A.M. (Docket No. 21).

The Petitioner failed to appear for the interview on June 14, 2005, and the Respondent filed its Second Motion to Dismiss on June 16, 2005. (Docket No. 24). Faturoti's opposition to the motion was docketed on July 1, 2005. (Docket No. 26). Therein he contended that the attorneys from the government were either "disbarred attorneys or unauthorized aliens/unregistered immigrants" and, therefore, "ineligible to

---

[4] The Petitioner was apparently of the belief that he did not have to comply with this court's orders unless they were confirmed by Judge Gertner, and otherwise misconstrued various court orders. (See, e.g., Docket Nos. 16, 17, 19 & 20). Judge Gertner denied Faturoti's request to reconsider this court's order requiring an interview "since there is no basis to do so." (See May 20, 2005 Docket Entry).

represent the U.S. Attorney's Office." He also asserted that this judge is "neither a bar attorney nor an authorized alien" and "lacks jurisdiction over this case." Furthermore, he contended that this judge ordered the interview "not only with prejudice, malice and bitterness but also without legal basis. Unconfirmed rumors say that she maintains that she 'wants to avenge her sister.' Other rumors say that she [is] only harloting for Hon. Gertner." No support for these charges were submitted. In addition, the Petitioner claimed that he had made a mistake and believed that the interview was June 20, 2005.

On July 19, 2005, this court ordered that the Respondent file by September 1, 2005 (later extended to September 13, 2005) "any supplemental response to Petitioner's Request for Judicial Review of the Denial of Naturalization it desires to address all the grounds for its opposition other than a lack of proof of continued good moral character. This is to enable this court to address all relevant issues together." (Docket No. 27). Faturoti was to file any supplemental response fourteen (14) days thereafter. (Id.). Faturoti filed responses on July 21, 2005 and September 1, 2005 objecting to the September 2005 dates. (Docket Nos. 28, 30). Therein, he contended that this court lacked jurisdiction over this matter because this judge is an "unauthorized alien" who is not a bar attorney and who does not have a High School Diploma from this country. (Docket No. 28). He also claimed that orders of the court were signed by an impersonator, probably a run-away prisoner. (Id.).

On September 13, 2005, the United States filed its response. (Docket No. 32). Therein, the Respondent notified the court for the first time that the legal issue it had

identified earlier was no longer a factor in this case.  Specifically, Respondent wrote that

it "conceded error in the reliance upon information obtained from the SAW application,

and absent the court ordered naturalization interview, Respondent is presently unable to

identify any additional barrier to Petitioner's naturalization beyond an evaluation of

'good moral character.'"  (Id.).  On September 19, 2005, the Petitioner filed a motion to

ignore the government's response on the grounds, inter alia, that the Assistant U.S.

Attorneys are "either disbarred or unauthorized aliens who are ineligible to work in the

United States" and this judge "lacks a law degree or a bar license" and is "also an

unauthorized alien."  (Docket No. 33).  Petitioner again offered no support for these

charges and the motion was denied.

On October 19, 2005, this court issued its R&R, recommending that the

Government's motion to dismiss be denied without prejudice.  The basis of the

Recommendation was that dismissal of the Petition would be inappropriate at the time

given the Government's belated acknowledgment that it could not rely on the information

in the SAW application.  This court further recommended "if the motion to dismiss is

denied, that this session promptly schedule a status conference and then a hearing on the

merits of the Petition.  The scope of the hearing would be defined at the status

conference."

In the R&R, the court cautioned the Petitioner that he needed to comply with this

court's orders.  As this court wrote:

-7-

Petitioner, however, should understand that "[t]he court has its own interest in securing compliance with its orders." [quoting <u>Serra-Lugo v. Consortium-Las Marias</u>, 271 F.3d 5, 6 (1ˢᵗ Cir. 2001)].  Consequently, Faturoti's failure to comply with future orders may result in the dismissal of his Petition.  His challenge to the jurisdiction of this court, and his contention that scheduling orders issued by this court do not have to be followed unless confirmed by the District Judge, are without merit.

(R&R at 7-8).

     Petitioner continued to write to the court contending that this judge lacked jurisdiction, repeating his unsubstantiated claims.  (<u>See</u> Docket No. 36).  On November 18, 2005, the District Judge adopted the R&R denying the Second Motion to Dismiss. By notice dated November 21, 2005, this court set a status conference for December 14, 2005 at 3:00 p.m.  The Petitioner failed to appear and did not otherwise notify the court of his unavailability.

     On December 21, 2005, the Government filed its Third Motion to Dismiss for failure to comply with the orders of the court.  (Docket No. 37).  On December 29, 2005, the Petitioner filed his Response to the motion to dismiss.  (Docket No. 39).  Therein, he repeated his charges against the United States' attorneys, again contending that they are either unauthorized aliens or disbarred attorneys.  He also contended that he never asked for a hearing, and he was not required to attend because he was "not part of the decision-making body."  (<u>Id.</u>).  The Petitioner does not deny having notice of the hearing.

## III.  ANALYSIS

It "cannot be doubted" that a federal court has the "power to sanction a party who repeatedly fails to comply with court-imposed deadlines[.]" <u>Torres-Vargas v. Pereira</u>, 431 F.3d 389, 390 (1ˢᵗ Cir. 2005), and cases cited.  In determining whether dismissal is appropriate, the court is to consider, among other things, "the trial court's need to manage its docket, the potential prejudice to the parties, and the policy of the law favoring disposition on the merits."  <u>Id.</u>  In this case, given the "repeated violations" of this court's orders and this court "having warned plaintiff of the consequences of non compliance," dismissal is appropriate.  <u>Serra-Lugo v. Mayaguez Consortium-Las Marias</u>, 271 F.3d 5, 6 (1ˢᵗ Cir. 2001).  In addition to refusing to comply with this court's orders, the Petitioner has affirmatively (and repeatedly) denied that this court has jurisdiction to resolve his case.  Giving the Petitioner yet another chance is no longer appropriate.

This court recognizes that "dismissal orders typically are measures of last resort, reserved for extreme cases."  <u>Torres-Vargas</u>, 431 F.3d at 393.  This is such an extreme case.  The Petitioner has left this court with no options.  Consequently, this action should be dismissed.

## IV.  CONCLUSION

For the reasons detailed herein, this court recommends to the District Judge to whom this case is assigned that the Respondent's Third Motion to Dismiss, or for Other

Appropriate Sanction, for Failure to Comply with this Court's Order (Docket No. 37) be

ALLOWED.[5]


                                          / s / Judith Gail Dein
                                          Judith Gail Dein
                                          United States Magistrate Judge

---

[5]    The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72 any
party who objects to these proposed findings and recommendations must file a written objection
thereto with the Clerk of this Court within 10 days of the party's receipt of this Report and
Recommendation.  The written objections must specifically identify the portion of the proposed
findings, recommendations or report to which objection is made and the basis for such objections.
The parties are further advised that the United States Court of Appeals for this Circuit has
repeatedly indicated that failure to comply with this Rule shall preclude further appellate review.
See Keating v. Sec'y of Health & Human Servs., 848 F.2d 271, 275 (1st Cir. 1988); United States
v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616
F.2d 603, 604-605 (1st Cir. 1980); United States v. Vega, 678 F.2d 376, 378-79 (1st Cir. 1982);
Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); see also Thomas v. Arn, 474 U.S. 140, 153-
54, 106 S. Ct. 466, 474, 88 L. Ed. 2d 435 (1985).  Accord Phinney v. Wentworth Douglas Hosp.,
199 F.3d 1, 3-4 (1st Cir. 1999); Henley Drilling Co. v. McGee, 36 F.3d 143, 150-51 (1st Cir.
1994); Santiago v. Canon U.S.A., Inc., 138 F.3d 1, 4 (1st Cir. 1998).